### CROCKER v. ALLEN.

1. ERRONEOUS JUDGMENTS—EQUITY.—A complaint which alleges that a judgment of foreclosure has been obtained against this plaintiff in an action in which she had never been served with summons or complaint, and of which she had no information until after advertisement of her property for sale, but stating no ground of equitable cognizance, and praying for injunction, fails to state a cause of action, the proper remedy being a motion in the original cause to vacate the default and entry of judgment. *Cases reviewed.*

2. IBID.—IBID.—The Court of Equity will not relieve a party from a judgment for a debt which is not alleged to be unjust or not due.

Before IZLAR, J., Spartanburg, March, 1890.

The complaint in this case was as follows:

1. That heretofore, on the      day of February, 1888, the defendant herein attempted to institute an action against her and a co defendant, J. J. Lipscomb, by the service upon him and an attempted service upon her of a summons and complaint therein, which complaint alleged:

1. That on the 9th of March, 1886, they, the said defendants, executed to her their joint and several note, wherein they pro-

mised to pay her, twelve months after date, the sum of seven hundred dollars, with interest from date at ten per cent. per annum until paid, payable semi-annually, and if not paid, to bear same rate as principal, and also to pay all costs and expenses, including ten per cent. attorney's commissions.

2. That the said defendant, R. F. Crockett, to secure the payment of the said note, executed to her on the same day a mortgage upon two tracts of land in said county, known as lots Nos. 5 and 6 of the estate of Gullie Crocker, deceased. Lot No. 5 being bounded by lands of Madison Lee, C. B. Hammett, Eliza Lee, and others; and No. 6 being bounded by lands of J. W. Wilkins, Mrs. E. M. Wilkins, Mrs. E. M. Lipscomb, and others, containing together two hundred and forty-five acres, more or less, and that the mortgage was duly recorded in book 8, p. 140.

3. That the condition of the note and mortgage had been broken, and that there was due thereon the sum of seven hundred dollars, with interest from the 9th of September, 1887; and the further sum of seventy dollars attorney's commissions.

Judgment was asked for foreclosure of mortgage and execution for balance of debt remaining due after exhausting mortgaged lands.

4. That on the 3rd day of April, 1888, a decree was rendered in said action by his honor, Judge W. H. Wallace, wherein he ordered: that the said mortgaged premises, or so much thereof as should be necessary, be sold at public auction at Spartanburg C. H., by the sheriff on salesday in October, or some convenient salesday thereafter, on terms of one half cash and balance on credit of six months; and provided for the application of the proceeds of such sale in accordance with the allegation and prayer of the complaint, and rendering judgment against both defendants for any balance that might be found due, after exhausting the proceeds of such sale; also ordering that the said R. F. Crocker, and all persons claiming under her, be forever barred and foreclosed of all right, title, interest, and equity of redemption in the said premises so sold.

5. That the said decree was, on the 4th day of April, 1888, duly filed with the clerk of court of said county, and on the 12th of same month the costs in said action were by him duly taxed

and approved, and along with the decree entered and signed in judgment and recorded; all of which will more fully appear by reference to the judgment roll in said action, No. 9162.

6. That the said decree was rendered by default, notwithstanding it appears from said judgment roll that there was no affidavit of plaintiff or her attorney that no answer, demurrer, or notice of appearance had been served or received therein.

7. That plaintiff has never at any time been served with a summons or complaint in said action, and that the first information she had of her having been sued therein was the advertisement of her aforesaid land for sale under said decree.

6. That in accordance with the terms of said decree, the sheriff has advertised the said premises for sale on salesday of November next, and that they will be sold unless prevented by this court.

7. That the said decree and all proceedings thereunder are null and void as to this plaintiff.

Wherefore plaintiff asks judgment:

1. That the sheriff of said county, the defendant, her agents or servants, be restrained from advertising and selling said land and from otherwise attempting to enforce said decree as against plaintiff.

2. That said decree be set aside and vacated as to her.

3. For the costs of this action, and for such other relief as may be just.

The report of H. B. Carlisle, master, was as follows:

The above cause having been referred to me by an order of this court, I submit the following report:

This is an action to set aside a judgment, on the ground that the defendant, R. F. Crocker, in the case of Anna G. Allen *versus* R. F. Crocker and J. J. Lipscomb, was never properly served.

The facts in the case, which are mostly undisputed, are as follows: The plaintiff in this action was living, at the time the summons was attempted to be served in the case of Allen *versus* Crocker, with her brother, A. A. Crocker, at Thicketty station. The summons was left with J. J. Lipscomb, one of the defendants in said case, about three miles from the home of his co-de-

fendant. She had given him no authority to receive papers for her, and, as a matter of fact, she, through his neglect, never knew of the suit until the advertisement of sale appeared in the newspaper. The plaintiff makes no allegation in her complaint, nor does she attempt to show by the testimony, that she has been injured in any way by the want of service because the debt sued on therein is not justly due, but simply asks the court to set it aside on the ground of want of jurisdiction. In fact, the testimony is that the debt was justly due and owing.

As matter of law, therefore, I hold that the plaintiff herein cannot come in and ask the aid of a Court of Equity in setting aside the judgment, without showing that she has been injured thereby, or that the result of another suit would be different. This doctrine is clearly set forth in Freeman on Judgments, section 498, and the position is supported by numerous citations to decisions in States that have adopted the Code.

But further than this, the right of the defendant in the original suit to apply by motion to the court that rendered the judgment and have it set aside, is so clear according to the provisions of the Code, that a Court of Equity will not interfere. *Southern Porcelain Company* v. *Thew*, 5 S. C., 5.

This view of the case renders it unnecessary to consider the defendant's right to foreclosure in this suit, and the demurrer of plaintiff.

I therefore recommend that the complaint be dismissed with costs.

The decree was as follows:

This case was heard before me at the extra term of the Court of Common Pleas for Spartanburg County aforesaid, on the pleadings, testimony, master's report, and exceptions thereto.

After a careful consideration of the case, I am led to concur in the conclusion reached by the master. The record in the case of Anna G. Allen against R. F. Crocker and J. J. Lipscomb is submitted as a part of the testimony taken in this action. It appears from the face of these proceedings, that the court had jurisdiction both of the subject matter of the action and of the judgment defendants. Due service of the summons and com-

plaint upon the defendants appear from the record not only to have.been made, but to have been made in accordance with law. "The judgment of a court of general jurisdiction is not void, except when the court has no jurisdiction over the subject matter of the suit, or when, having such jurisdiction over the subject matter, it is shown by the record to have had no jurisdiction over the judgment defendant."

In the case of *Turner* v. *Malone*, 24 S. C., 405, the court say : "The word 'void' can with no propriety by applied to a thing which appears to be sound, and which, while in existence, can command and enforce respect, and whose infirmity cannot be made manifest. A judgment rendered without in fact bringing the defendants into court, unless the want of authority over them appears in the record, is no more void than if it were founded upon a mere misconception of some matter of law or of fact occurring in the exercise of an unquestionable jurisdiction. In either case the judgment can be avoided and made *functus officio* by same appropriate proceeding instituted for that purpose, but if not so avoided, must be respected and enforced." Freem. Judg., § 116. "It seems" (say our Supreme Court in *Turner* v. *Malone, supra*) "that in respect to impeachment, a judgment may be either 'void' where the record shows the fatal defect without proof, or 'voidable' where there is a hidden infirmity which can only be made to appear by proof, or 'avoided where such infirmity has been already properly established. In the case of a judgment merely 'voidable' where proof is necessary, it seems that the infirmity cannot be shown in a collateral manner, but only in a direct proceeding instituted for that purpose; and until that is done, the judgment must be respected as such. As we understand it, what is meant by a direct proceeding, is a proceeding by the party injured, claiming to have the judgment 'avoided' by order in the court and in the case in which it was rendered." A collateral attack upon a judgment has been defined to be "one in an action other than that in which it was rendered." Such being the rule, it follows that the plaintiff here should have attacked the judgment by some appropriate proceeding instituted for that purpose "*in the court and in the case*" in which said judgment was rendered, it appearing from the record that said

judgment was not "void" for want of jurisdiction over the person of the judgment defendant—the plaintiff in this action.

The application of these principles to the facts here is, in my opinion, fatal to the plaintiff's case. But even if this objection was out of the way, a careful consideration of the plaintiff's complaint leads me to conclude that it does not state facts sufficient to constitute a cause of action. The complaint contains no allegations of fraud, collusion, or mistake in obtaining the judgment now sought to be vacated and set aside; nor does it contain any allegation that the plaintiff has suffered or is suffering, or is likely to suffer, any injury whatsoever from the enforcement of said judgment. The case rests solely upon the allegation of non service of the summons in the case of Allen v. Crocker et al., upon the plaintiff herein. We fail to see in this a sufficient ground for the equitable relief demanded in the complaint. There must be something more, in my opinion, than this bare allegation to constitute a cause of action, which would entitle the plaintiff to equitable relief.

The view which we have taken of the case obviates the necessity of passing upon the other questions raised by the exceptions and in the arguments of the counsel. I therefore express no opinion as to the validity of the judgment of foreclosure and sale in the case of Allen v. Crocker et al., further than to say, that from the record it appears to me to be regular and binding.

It is therefore ordered, that the exceptions to the master's report, filed by the plaintiff be overruled, and the said report, in so far as it recommends that the complaint of the plaintiff be dismissed with costs, be and the same is hereby confirmed and made the judgment of the court. Let judgment be entered accordingly.

Plaintiff appealed.

*Mr. Stanyarne Wilson,* for appellant.

*Messrs. Bomar & Simpson,* contra.

September 18, 1891. The opinion of the court was delivered by

MR. JUSTICE McIVER. This was an action brought by the

plaintiff herein to set aside a judgment previously obtained against
her by the defendant herein, and to obtain an injunction to re-
strain the enforcement of the execution issued on said judgment,
solely upon the ground that she was never served with the sum-
mons in the former action, and had no knowledge of any such
proceedings against her until her land was advertised for sale
under said execution.   In her complaint, a copy of which is set
out in the "Case," and which should be incorporated in the
report of this case, she makes no allegation of fraud, and states
no fact imparting an equitable feature to her case, and her de-
mand for an injunction is not sufficient to give it such a charac-
ter for two reasons : 1st. Because, as we have held in the case
of *Westlake* v. *Farrow*, *ante* 270, decided at the present term,
the demand for relief cannot be looked to as giving character to
the cause of action ; and 2nd, because she states no case entitling
her to an injunction.   *Gillam* v. *Arnold*, 32 S. C., 503.

The Circuit Judge held, amongst other things which, under the
view we take of the case, need not be stated, that the complaint
failed to state facts sufficient to constitute a cause of action, and
therefore rendered judgment dismissing the complaint.   From
this judgment plaintiff appeals upon the several grounds set out
in the record ; but as the fundamental question in the case, super-
seding all others, is whether the Circuit Judge erred in his rul-
ing as above stated, we shall confine ourselves to that question.

In the case of *The Southern Porcelain Manufacturing Company*
v. *Thew*, cashier of the National Bank of Augusta, Georgia (5 S.
C., 5), the action was brought to set aside a judgment con-
fessed by the president of the plaintiff company to the de-
fendant, upon the allegation that the judgment was null and
void for three reasons, substantially : 1st. Because the confession,
not being under the corporate seal, was not legal or binding upon
the plaintiff.   2nd. Because the debt admitted by the plaintiff was
not the legal obligation of the plaintiff corporation.   3rd. That
the confession was signed by a person having no authority what-
ever to do so.   It was held that these averments, standing by
themselves, would neither support an action at law nor a bill in
equity under the former procedure ; but that the remedy was by
motion in the court in which the judgment was rendered, if the

same was insufficient in form, or for any reason void. In that case it is said : "An action under the Code of Procedure only lies where the subject matter of such action furnished ground previous to the adoption of the Code for the maintenance of either an action at law or a bill in equity," or in certain other cases not applicable to the present inquiry. * * * "What rights shall be enforced and what wrongs shall be redressed by a civil action, is not determined by the Code, except in the case of proceedings formerly taken by *scire facias, quo warranto*," &c. "These matters are therefore to be determined according to the law as it stood previous to the adoption of the Code. In order, then, to ascertain whether a complaint under the Code sets forth a sufficient cause of action, except in the special cases above enumerated, the inquiry must be whether, under the former practice of this State, the matters set forth were sufficient either to support an action at law or a bill in equity."

Now, as it was well setted that a Court of Equity would not entertain a case asking for relief, where the party complaining had a plain, adequate, and complete remedy at law, the practical inquiry in this case is whether, under the former practice, the plaintiff would have had a plain and adequate remedy for the wrong of which she complains, by motion to the court and in the case in which the judgment in question was rendered. If she had, then she cannot maintain an action on the equity side of the court to obtain the redress sought, but must resort to the simpler and less expensive remedy by motion.

A review of the authorities will show beyond dispute that the Court of Common Pleas has always claimed and exercised the power to entertain such a motion. In *Mooney* v. *Welsh* (1 Mill Con. R., 133), the motion was to set aside a judgment on the ground that the verdict and judgment exceeded the damages laid in the writ, and it was held that the Court of Common Pleas has always exercised the power of looking into its own records, and on motion affording that remedy which is obtained by writ of error in England. In *Barns* v. *Branch* (3 McCord, 19), a motion was entertained to set aside proceedings for partition in the law court, upon the ground of want of notice to the guardian *ad litem* of the infant defendants, although such want of notice did

not appear on the record. In that case Nott, J., expresses the opinion that a Court of Equity could not afford relief. In *Wotton* v. *Parsons* (4 McCord, 368), the motion was to set aside a judgment upon the same ground as that upon which the plaintiff in the case now under consideration bases her action, to wit, want of service of the process; and it was held that while a judge at chambers could not grant such a motion, yet he might order a stay of execution until the motion could be heard and determined by the court.

In *Posey* v. *Underwood* (1 Hill, 263), O'Neall, J., uses this language: "Generally there can be no doubt that a court of law possesses exclusive jurisdiction over the amendment or vacation of its own judgments. This power applies most usually to matters of form or substance apparent on the face of the record. Sometimes, however, it is exercised, as between the parties, on matters out of and beyond the record; and he goes on to prescribe the mode of proceeding in such cases. To the same effect is *Dial & Henderson* v. *Farrow* (1 McMull., 292), in which Judge O'Neall in terms recognizes the doctrine that a judgment may be set aside on a motion upon the ground that defendant had not been served with process. In *Haigler* v. *Way* (2 Rich., 324), it was held that the proper mode of proceeding to set aside a judgment irregularly obtained against an infant, there having been no guardian *ad litem* appointed and no appearance having been entered, was by a motion in the case.

In *Williams* v. *Lanneau* (4 Strob., 27), a judgment for the amount assessed in lieu of dower was set aside on motion, upon the ground that the defendant had not been served with a copy of the summons on which the subsequent proceedings were based, the court recognizing several of the preceding cases, especially *Wotton* v. *Parsons*, and citing another very similar case, *O'Neall* v. *Wright*, which does not seem to have been reported. To same effect see *Crane* v. *Martin*, 4 Rich., 251; *Mills & Co.* v. *Dickson & Mills*, 6 *Id.*, 487; and *Stenhouse* v. *Bonum*, 12 *Id.*, 620, in which last named case the judgment was set aside on motion upon the ground of want of jurisdiction in the court which undertook to render said judgment. The case of *Townsend, Arnold & Co.* v. *Meetze* (4 Rich., 510), is not in conflict with the

foregoing cases. On the contrary, the practice of proceeding by motion was distinctly recognized, and the only reason why the motion was refused in that case was because a discovery was demanded and was necessary, which could only have been obtained in a Court of Equity.

These cases unquestionably establish the doctrine that the proper mode of proceeding to set aside a judgment prior to the abolition of the Court of Equity was by motion to the court and in the cause wherein the judgment was rendered, and therefore a bill in equity for that purpose would not be entertained by the Court of Equity, unless it contained allegations imputing to the case some features of equitable cognizance; such, for example, as fraud, accident, or mistake, or unless a discovery was demanded. See *Attorney General* v. *Baker*, 9 Rich. Eq , at pages 530-1; *McDowall* v. *McDowall*, Bail. Eq., 325. That the same practice has been recognized and followed since the Court of Equity was abolished as a separate tribunal, may be seen by reference to the cases of *Southern Porcelain Manufacturing Company* v. *Thew*, cashier of National Bank of Augusta, Georgia, 5 S. C., 5, *supra; Clark* v. *Porcelain Manufacturing Company*, 8 *Id.*, 22 ; *Ex parte Carroll*, 17 *Id.*, 446 ; *Ferguson & Miller* v. *Gilbert & Co.*, 17 *Id.*, 26 ; *Darby & Co.* v. *Shannon*, 19 *Id.*, at page 533 ; *Turner* v. *Malone*, 24 *Id.*, 398.

To these authorities in our own State may be added that of the Supreme Court of the United States, in the case of *Walker* v. *Robbins*, 14 How., 584. In that case a bill in equity was filed in the Circuit Court of the United States for the District of Mississippi, praying a perpetual injunction against a judgment recovered in an action at law in the same court, upon the ground, amongst others, that Walker had not been served with process in the action at law, though the record of such judgment showed on its face that Walker had been duly served. It was held that the bill could not be maintained, the court using this language : "Assuming the fact to be that Walker was not served with process (that being the undisputed evidence in the case), and that the marshal's return is false, can the bill in this event be maintained ? The respondents did no act that can connect them with the false return; it was the sole act of the marshal, through his

deputy, for which he was responsible to the complainant Walker, for any damages that were sustained by him in consequence of the false return. This is free from controversy; still the marshal's responsibility does not settle the question made by the bill, which is, in general terms, whether a Court of Equity has jurisdiction to regulate proceedings, and to afford relief at law where there has been abuse in the various details arising on execution of process, original, mesne, or final. If a Court of Chancery can be called on to correct one abuse, so it may be to correct another, and in effect to vacate judgments where the tribunal rendering the same would refuse relief, either on motion or on a proceeding by *audita querela,* where this mode of redress is in use. In cases of false returns affecting the defendant, where the plaintiff at law is not in fault, redress can only be had in the court of law where the record was made, and if relief cannot be had there, the party injured must seek his remedy against the marshal." It is true that in that case the court does go on to assign another reason for the conclusion reached—that the appellant, Walker, though not served with process, had really appeared by counsel in the action at law—but this does not weaken the force and effect of the first reason assigned in the words above quoted.

It seems to us clear, therefore, that this action on the equity side of the court cannot be sustained, where, as in this case, the complaint contains no allegations imputing to the case any features of equitable cognizance, but rests solely upon the allegation that plaintiff was never served with process in the action in which the judgment in question was recovered. The fact that such judgment was recovered in an action on the equity side of the court to foreclose a mortgage, cannot affect the question. The record of the case in which the judgment sought to be set aside is complete in itself, and shows no flaw or defect. It does not show that the defendant therein (the plaintiff here) was not served, but shows the contrary; and if it is proposed to show that the return of the sheriff was false, by evidence *de hors* the record, it should be done by a motion in that case; for while it stands as it is, it must be regarded as a valid judgment in any other action or proceeding. In this respect the present case differs radically from *Finley* v. *Robertson,* 17 S. C., 439, and *Genobles* v. *West,*

23 *Id.*, 160; for there the jurisdictional defect, for want of proper service, appeared upon the face of the record, while here the contrary is the case.

It cannot be said that the necessity for an injunction would be sufficient to give the Court of Equity jurisdiction; for that relief was always obtainable by a motion to stay the execution, which the authorities above cited show could have been granted by a Circuit Judge at chambers, even before the enactment of the statute expressly conferring such power, now incorporated in General Statutes as section 2115.

There is another view which would be sufficient to show that this action on the equity side of the court cannot be maintained under the allegations made in the complaint. In Freeman on Judgments, section 498, the author, while admitting that there are decisions in some of the States to the contrary, says: "The better established rule undoubtedly is, that notwithstanding an alleged want of service of process, a Court of Equity will not interfere to set aside a judgment until it appears that the "result will be other or different from that already reached." This, we suppose, rests upon the elementary doctrine that he who seeks equity must do equity. Where, therefore, a party invokes the aid of the Court of Equity to be relieved from a judgment obtained against him for a debt which is neither alleged nor shown to be unjust, simply on the ground of some error in the proceedings, not affecting the merits, the Court of Equity may very properly refuse its aid in enabling a party to escape the payment of what appears to be a just debt, and which is neither alleged nor shown to be otherwise, and leave the party to his remedy at law, if he has any. As is said by Curtis, J., in *Hendrickson* v. *Hinckley*, 17 How., 443: "A Court of Equity does not interfere with judgments at law unless the complainant has an equitable defence of which he could not avail himself at law, because it did not amount to a legal defence; or had a good defence at law which he was prevented from availing himself of by fraud or accident, unmixed with negligence of himself or his agents"—citing *Walker* v. *Robbins, supra,* and also *Marine Insurance Company* v. *Hodgson* (7 Cranch, 333), in which that great judge, Marshall, C. J., said: "Without attempting to draw any

precise line to which Courts of Equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said that any fact which clearly proves it to be against conscience to execute · a judgment, and of which the injured party could not have availed himself in a court of law ; or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a Court of Chancery."

It seems to us, therefore, that in no view of the case could the action be maintained, and that there was no error in dismissing the complaint.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.